```
┌─────────────────────────────┐
│ USDS SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #: _____              │
│ DATE FILED: __4/3/08__      │
└─────────────────────────────┘
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

In re:                                          :        Chapter 11
                                                :
GRANITE BROADCASTING                            :        Case No. 06-12984 (ALG)
CORPORATION, et al.,                            :
                                                :
                Reorganized Debtors.            :        (Jointly Administered)
-------------------------------------------------------------x
                                                :
JUNE FOSTER,                                    :
                                                :
                Appellant,                      :        07-CV-6217 (CM)
                        -against-               :
                                                :
GRANITE BROADCASTING                            :
CORPORATION, et al.,                            :
                                                :
                Appellees.                      :
-------------------------------------------------------------x

## DECISION AND ORDER AFFIRMING THE BANKRUPTCY COURT'S ESTIMATION ORDER AND DISMISSING FOSTER'S APPEAL OF THE CONFIRMATION ORDER

McMahon, J.:

Before this Court is an appeal of June Foster ("Appellant" or "Foster") of the Orders of

the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy

Court"), dated May 18, 2007 and May 22, 2007, respectively (collectively, the "Bankruptcy

Court Orders"), that (i) estimated the claims asserted by Foster (the "Foster Claims") at $0 for

allowance, voting, and distribution purposes (the "Estimation Order") and (ii) confirmed the

Modified First Amended Joint Reorganization Plan Under Chapter 11 of the Bankruptcy Code

-1-

**Copies mailed /faxed/handed to counsel on** 4/3/08

(the "Plan") of the Reorganized Debtors (the "Confirmation Order"). For the reasons set forth

herein, the Court affirms the Estimation Order and dismisses Foster's appeal of the Confirmation

Order as moot.

## BACKGROUND

### *A.    June Foster Litigation*

Foster has been litigating against Granite for approximately six years. (ROA-15, Exhibit

A at 1.[1])

From March 2000 to June 2001, Foster worked at KNTV TV, Inc. ("KNTV," together

with Granite, the "Defendants"), a San Jose-based television station owned at the time by

Granite. (Id. at 2, ¶ 2,3.) On June 27, 2001, KNTV terminated Foster's employment. Believing

she had been wrongfully terminated, Foster sued Granite and KNTV in California Superior Court

on November 21, 2001 (the "State Court Action"). She alleged that she had been fired in

retaliation and for discrimination and in violation of public policy. (ROA-15, Exhibit A.) Foster

also alleged that Granite's termination of Foster violated Title VII, 42 U.S.C. section 2000e. (Id.)

On December 28, 2001, Defendants removed the State Court Action to the District Court

for the Northern District of California (the "California District Court"). (ROA-15, Exhibit L at

3.) On May 8, 2002, as a result of Foster's amendment of her complaint to dismiss the Title VII

count and her subsequent motion for remand (which was opposed by Defendants), the California

District Court remanded the action back to state court. (Id. at 1.)

---

[1]Citations in the format "ROA-___ at ___" refer to the document number set forth, as applicable, in
the Record of Issues on Appeal Pursuant to Bankruptcy Rule 8006 filed by Foster (the "ROA"),
Appellees' Counter-Designation of the Record and Restatement of Issues on the Appeal of June
Foster (the "Granite ROA"), and Amended Record and Issues on Appeal, Pursuant to Bankruptcy
Rule 8006 (the "Amended ROA"), followed by the page and paragraph of such document.

On June 29, 2003, Foster filed a second amended complaint alleging the following causes of action: (i) retaliation for reporting unlawful discrimination, namely KNTV's termination of Foster's employment; (ii) retaliation for reporting unlawful discrimination, namely KNTV's issuance of a poor performance review to Foster; (iii) violation of public policy; (iv) creation of a hostile work environment in violation of California law; (v) intentional infliction of emotional distress; and (vi) equitable relief. (ROA-15, Ex. B.)

On October 23, 2003, the California state court granted summary judgment to the Defendants with respect to Foster's claims for (i) the creation of a hostile work environment and (ii) intentional infliction of emotional distress. (ROA-15, Ex. M.) The court then held a jury trial on whether KNTV's issuance of a negative performance review to and/or termination of Foster were actions taken in retaliation for Foster having complained about perceived discrimination, and therefore violations of the California Fair Employment and Housing Act, Cal. Gov. Code § 12940 et seq. and/or public policy. After 18 days of trial, on January 7, 2004, the jury returned a unanimous verdict in favor of the Defendants and against Foster. (ROA-15, Exhibit C.)

Foster's post-trial motions seeking to overturn the verdict were denied by the trial court in an order dated April 9, 2004. (ROA-15, Ex. N at 3-4.) The trial court similarly denied Foster's motion for reconsideration, in an order dated July 1, 2004. (Id.)

Foster appealed to the California Court of Appeals, asserting, among other things: (i) errors regarding the admission and exclusion of certain evidence during the trial; (ii) error regarding an improper jury instruction; and (iii) that the jury's verdict was not supported by substantial evidence. (ROA-15 at 9-10, ¶ 2.) On May 25, 2006, the California Court of Appeal, Sixth Appellate District, affirmed the trial court in all respects. (ROA-1, Ex. O.)

Foster then sought review by the California Supreme Court. On August 16, 2006, the California Supreme Court denied Foster's Petition for Review. (Appellant's Brief at 17.) Foster did not appeal this denial to the United States Supreme Court, and her time to file such an appeal expired 90 days later on November 14, 2006. See 28 U.S.C. § 2101(c); SUP. CT. R. 13.

On September 15, 2006, Foster filed a Petition for Removal (the "Petition for Removal") with the California District Court purporting to remove the State Court Action to federal court. (ROA-15, Ex. H.)

In the Petition for Removal, Foster sought a review of the jury verdict and the state court appellate decisions upholding such verdict. (Id.) Foster alleged various errors in the evidence at trial and in an instruction to the jury in the State Court Action that she claimed violated her rights under both the U.S. Constitution and the California Constitution. (Id.) Among other things, Foster alleged that the jury trial and verdict in the State Court Action deprived her of rights under the Fourteenth and Seventh Amendments to the U.S. Constitution, including equal protection rights, due process rights, and property rights. (Id.) Foster's Petition for Removal also raised new claims based on the same facts litigated in the State Court Action, including a claim under 42 U.S.C. § 1983. (Id.)

Foster also filed a request to proceed *in forma pauperis*, which the California District Court denied without prejudice on October 6, 2006 (the "October 6 Decision"), finding that

> Plaintiff seeks to remove a civil rights action for retaliatory firing from the California state courts and litigate it in federal court. This action was subject to a jury trial in California, and plaintiff unsuccessfully appealed to the California Court of Appeals and the California Supreme Court . . . . The Court concludes that the Plaintiff's action is without merit on its face. The principle of comity requires that federal courts respect the judgments of state courts. The Court does not have the authority to review the judgment of the California Supreme Court in this case.

(ROA-15, Ex. I at 1-2.)

On October 10, 2006, Defendants filed a motion to dismiss or strike the Federal Court

Action. (ROA-15, Ex. K.) Foster responded by filing a request for permission to file an amended

petition for removal. (ROA-15, Ex. J at 1-2.) In an order dated November 16, 2006 (the

"November 16 Decision"), the California District Court denied Foster's request without

prejudice, noting, "The Court concluded in its October 6, 2006 order that Foster's action is

without merit on its face," that the California District Court "reaffirms this conclusion" and that,

"It appears from the face of the complaint that the Court likely lacks subject matter jurisdiction."

(Id.)

On November 27, 2006, Foster filed two notices of appeal with the United States Court of

Appeals for the Ninth Circuit of the California District Court's decisions denying (i) Foster's

motion to proceed *in forma pauperis* and (ii) Foster's motion for leave to amend her petition for

removal. (See Order, Case No. 06-17254 (9th Cir. May 14, 2007) (unpublished).) Foster also

contemporaneously filed a motion with the Ninth Circuit to proceed *in forma pauperis*. (Id.)

On December 8, 2006, upon request of Foster, the California District Court stayed the

Federal Court Action pending Foster's appeal to the Ninth Circuit. (See Civil Docket No. 45,

Case No. 06-05688 (JF) (the "District Court Docket").) On February 22, 2007, the Ninth Circuit

issued an order denying Foster's motion to proceed *in forma pauperis*. (ROA-15, Ex. K.) The

Ninth Circuit's order (i) required Foster to pay fees to the district court for docketing and filing

the appeal within 21 days of the order; (ii) provided that a failure by Foster to pay these fees will

result in the dismissal of her appeal; and (iii) noted the pending bankruptcy case and stayed the

appeal pending further order of the court. (Id.)

On May 14, 2007, United States Court of Appeals for the Ninth Circuit summarily affirmed the district court's November 16, 2006 orders denying Foster's request to proceed *in forma pauperis* and motion to amend her petition for removal. (See Order, Case No. 06-17254 (9th Cir. May 14, 2007) (unpublished).) Foster did not appeal this decision to the United States Supreme Court, and her time to file such an appeal expired on August 13, 2007. See 28 U.S.C. § 2101(c); Sup. Ct. R. 13. The Ninth Circuit denied plaintiff's motion for a rehearing en banc and on July 6, 2007 issued the mandate, divesting the Ninth Circuit of jurisdiction. (Letter from Richard W. Wieking, Clerk, dated July 10, 2007.)

On June 13, 2007, the California District Court dismissed the Federal Court Action, because Foster failed to appear at a Court-scheduled conference. (Order, Case No. 06-05688 (JF) (N.D. Cal. June 13, 2007) (unpublished).) Foster subsequently filed for relief from dismissal. On July 31, 2007, the California District Court entered an order granting such relief, but admonishing Foster that:

> Plaintiff should pay the filing fee in this action within thirty days of the date of this order . . . . Plaintiff's letter also informed the Court of her worsened financial situation. While the Court is sorry to hear of this change, because the Court previously concluded that Plaintiff's action is without merit on its face, Plaintiff may not proceed in forma pauperis.

(See Order, Docket No. 65, Case No. 06-05688 (JF) (N.D. Cal. July 31, 2007) (unpublished).)

## B.    *Relevant Facts Regarding the Debtors' Chapter 11 Cases, Plan, and the Estimation Order*

Together, Granite and its affiliates form one of the largest minority-operated television broadcasting companies in the United States. Granite focuses primarily on developing and operating small to middle-market television broadcasting stations along with two large-market

stations in Detroit and San Francisco. Granite and its affiliates own and operate one full-power independent and eight full-power network-affiliated television stations in geographically diverse markets reaching over 6% of the nation's television households and have contracts to provide advertising, sales, promotion services, administrative services, and selected programming to four additional stations. Each of Granite and its affiliates' ABC, NBC, and CBS affiliates are leading providers of local news, weather, and sports in their respective markets.

On December 11, 2006 (the "Petition Date"), the Debtors each commenced with the Bankruptcy Court a voluntary case under chapter 11 of the Bankruptcy Code. (Confirmation Decision at *2.) On the same date, the Debtors filed the Plan (which was subsequently modified and amended). (Id. at *12.)

Prior to the Petition Date, the Debtors engaged in several months of negotiations with Silver Point Finance, LLC and its legal advisors that culminated in the restructuring proposed in the Plan, which permitted the Debtors to minimize their time in chapter 11 and reduce the attendant effects on the operation of the Debtors' businesses.

On January 15-16, 2007, the Debtors filed their schedules of assets and liabilities and statements of financial affairs in these cases. (ROA-43 (Appellees' Counter-Designations) at 15-16.) The Debtors listed the Foster Claims on Granite's Schedule F with the amount listed as "unknown" and the claims identified as contingent, disputed, and unliquidated. (Id.)

On February 16, 2007, the Court entered an order setting March 27, 2007 as the bar date for filing proofs of claim relating to certain claims, including the Foster Claims. (ROA-15 at 11, ¶ 34.)

-7-

### 1.    *Estimation Proceedings*

Because proofs of claims were due but two and a half weeks before the hearing to consider confirmation of the Plan (April 13, 2007), it was imperative that any contingent and unliquidated claims be fixed so as to determine the confirmability of the Plan. Section 10.1(c) of the Reorganization Plan contained a condition to confirmation that provided "[t]he Confirmation Order shall contain a finding that the aggregate amount of Cash necessary to satisfy Allowed Claims in Classes 4A, 5, 6, 7, 8, and 9 shall not exceed $11.0 million." (ROA-44 (Appellees' Counter-Designations).)

Accordingly, on March 15, 2007, the Debtors filed their Motion Pursuant to Sections 502(c) and 105(a) of the Bankruptcy Code to Estimate Claim of June Foster (the "Estimation Motion") seeking to estimate the Foster Claims at $0 for voting, allowance, and distribution purposes. (ROA-15.) Foster timely filed an objection to the Estimation Motion. (ROA-16.)

On March 21, 2007, Foster filed a proof of claim against the Debtors' estates in the amount of $10 million. On March 22, 2007, Foster filed another duplicate claim against the Debtors' bankruptcy estates.

On April 11, 2007, the Bankruptcy Court held a hearing on the Estimation Motion at which Foster participated and advocated telephonically, as she requested. At such time, the Bankruptcy Court reserved decision on the Estimation Motion.

On May 18, 2007, the Bankruptcy Court entered the Estimation Order estimating the Foster Claims at $0 for all purposes. (See Estimation Order.) In granting the relief sought in the Estimation Motion, the Bankruptcy Court noted that "Ms. Foster has been denied substantive relief on her claim in repeated attempts in both State and federal courts, and there is no reason to

-8-

believe her final appeal to the Ninth Circuit has any likelihood of success whatsoever." (Id.)

## 2. *Confirmation Proceedings*

Foster also objected to confirmation of the Plan on the sole ground that the Plan allegedly failed to treat the Foster Claims in a manner consistent with the treatment provided to similarly situated Claims in Class 4A (the class in which claims against Granite were classified) and, thus, allegedly violated various provisions of the Bankruptcy Code. (ROA-25.) The hearing to consider confirmation of the Plan began on April 16, 2007 and concluded on April 30, 2007. (See Confirmation Decision at *18-19.)

On May 18, 2007, the Bankruptcy Court issued its written Confirmation Decision. The Confirmation Order, however, was not entered until May 22, 2007 after the Bankruptcy Court held a hearing on the proper form of order.

## 3. *Post-Confirmation and Estimation Order Pleadings*

Thereafter, Foster filed a series of motions with the Bankruptcy Court. Specifically, Foster filed the following pleadings:

- a motion to reconsider the Bankruptcy Court Orders, dated May 26, 2007 (the "First Motion to Reconsider");

- her notice of appeal of the Confirmation Order and Estimation Order, dated May 26, 2007;

- an ex parte letter seeking to disqualify Judge Gropper, dated May 26, 2007 (the "First Disqualification Request");

- an amended notice of appeal, dated June 4, 2007; and

- the Record and Issues on Appeal, Pursuant to Bankruptcy Rule 8006, dated June

-9-

4, 2007, which was amended by Foster on July 18, 2007.

On June 1, 2007, Stuart M. Bernstein, Chief Judge of the Bankruptcy Court, denied the

First Disqualification Request. In a letter to Foster, Chief Judge Bernstein stated that Foster's

letter:

> does not identify any specific instance of bias, and I do not infer that he was
> biased from his decision. If you believe that you have been aggrieved by Judge
> Gropper's ruling, you are free to pursue whatever appellate rights you may have.
> Furthermore, if you desire the disqualification of Judge Gropper, you must direct
> your disqualification motion to him, not me. I do not intend to take any action in
> this matter.

(ROA-65 (Appellees' Counter Designations).)

On June 6, 2007, the Bankruptcy Court denied the First Motion to Reconsider, stating,

"Ms. Foster has submitted papers in which she purports to move for reconsideration of both the

Confirmation Order and the Estimation Order but has cited no new facts or law which the Court

overlooked or any valid grounds for reconsideration of the orders."

On the same day, Foster filed another pleading seeking to disqualify Judge Gropper from

"making any more orders as it relates to any further post-Confirmation motions and my recent

Motion to Re-estimate my Claim" (the "Second Disqualification Motion").

In addition, taking the Bankruptcy Court's decision on the First Motion to Reconsider as

an invitation to cite to "new facts or law which the Court overlooked," on June 11, 2007, Foster

filed a second motion to reconsider the Bankruptcy Court Orders (the "Second Motion to

Reconsider"). (ROA-46 (Amended Record).)

On June 30, 2007, Foster filed a motion to compel mediation of the Foster Claims (the

"Mediation Motion"). (ROA-52 (Amended Record).)

-10-

On July 12, 2007, the Bankruptcy Court issued an order denying the Meditation Motion, Second Disqualification Motion, and Second Motion to Reconsider. (ROA-54 (Amended Record).)

## C.   *Implementation of the Reorganization Plan*

Following entry of the Confirmation Order, certain holders of Granite's pre-petition preferred stock (including Harbinger Capital Partners) requested a stay of the Confirmation Order pending appeal and also filed a notice of appeal of the Confirmation Order. The stay was denied and the appeal has been voluntarily dismissed. (ROA-39 (Amended Record).) The Debtors implemented the Plan, including, without limitation, (i) receiving approval from the Federal Communications Commission to transfer the television broadcasting licenses held by the Debtors to the Reorganized Debtors; (ii) entering into numerous agreements, including entry into a new secured term loan and secured revolver, in the aggregate amount of $250 million; (iii) filing new certificates of incorporation and bylaws relating to the reorganized legal entities with the secretary of state in the appropriate jurisdictions; (iv) cancellation of prepetition indebtedness and equity interests; (v) distributing cash in satisfaction of all allowed general unsecured claims against the Debtors' estates and other cash expenses under the Plan; and (vi) issuing approximately 11 million new equity interests and warrants to purchase equity interests in Reorganized Granite.

On June 4, 2007, the Plan became effective and the Debtors emerged from chapter 11 and began conducting business as the Reorganized Debtors. (ROA-66 (Appellee's Counter-Designations).

### DISCUSSION

*A.*    *Standard of review*

"On appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's

judgment, order or decree or remand with instructions for further proceedings. Findings of fact,

whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous,

and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility

of witnesses." Fed. R. Bankr. P. 8013; see also In re Blaise, 219 B.R. 946, 950 (2d Cir. BAP

1998). A bankruptcy judge's legal conclusions are reviewed *de novo*. See In re Cody, 338 F.3d

89, 94 (2d Cir. 2003); In re 139-141 Owners Corp., 313 B.R. 364, 367 (S.D.N.Y. 2004).

*B.*    *Foster's Appeal of the Estimation Order*

In her principal brief, Foster argues that the Bankruptcy Court erred with respect to the

entry of the Estimation Order because: (i) the Bankruptcy Court did not have jurisdiction to

estimate her Claims for distribution purposes pursuant to section 157(b)(2)(B) of the Judicial

Code because such Claims are "personal injury claims;" (ii) the Bankruptcy Court improperly

disallowed the Foster Claims by estimating such Claims at $0 for all purposes; and (iii) the

Bankruptcy Court's chosen method of estimating the Foster Claims at $0 was an abuse of

discretion.

First, the Foster Claims have no basis in law or fact and have been repeatedly rejected by

every court in which they have been asserted. Moreover, the claims were fully and finally

resolved by the California state courts and such resolution is subject to the Full Faith & Credit

Act, and are precluded by the doctrine of claim preclusion because they arise from the same facts

as the State Court Action, namely KNTV's termination of her employment. Finally, Foster's §

-12-

1983 claim is time-barred, because it expired on June 27, 2003, two years after KNTV

terminated Foster's employment. See Cal. Civ. Proc. Code § 335.1.[2]  Thus, the Bankruptcy

Court properly estimated the Foster Claims at $0.

Second, the Bankruptcy Court properly exercised its jurisdiction in estimating Foster's

claims.  Even assuming *arguendo* that the Foster Claims are "personal injury claims," the

Bankruptcy Court was still within its authority to make the threshold determination of whether

the Foster Claims are allowable and whether such claims are subject to estimation for all

purposes at $0.  See In re Chateaugay Corp., 111 B.R. 67, 76-77 (Bankr. S.D.N.Y. 1990)

(Chatteaugay I) ("A bankruptcy court has the right and duty to disallow claims as a threshold

matter, if *no legal basis* for the claim exists against the debtor."), *aff'd*, 146 B.R. 339 (S.D.N.Y.

1992); In re Aquaslide 'N' Dive Corp., 85 B.R. 545, 549 (9th Cir. BAP 1987) (finding that the

bankruptcy court's disallowance of personal injury claims through estimation was proper); In re

U.S. Lines, Inc. v. U.S. Lines Reorganization Trust, 262 B.R. 223, 234 (S.D.N.Y. 2001); In re

U.S. Lines, Inc., 2006 WL 1559237, at *6 (S.D.N.Y. 2006).

Finally, the Bankruptcy Court did not abuse its discretion by using a "binary approach" to

estimate the Foster Claims.  Bankruptcy judges have wide discretion in selecting a method for

estimating claims, and may use "whatever method is best suited to the circumstances." 11 U.S.C.

§ 105(a); see also Maxwell v. Seaman Furniture Co. (In re Seaman Furniture Co. of Union

Square), 160 B.R. 40, 42 (S.D.N.Y. 1993) (citing Addison v. Langston (In re Brints Cotton

---

[2]Foster asserts that the predecessor version of section 335.1 applies, because the current version
of section 335.1 was enacted after Foster initiated the State Court Action (but several years
before she filed the Federal Court Action with her section 1983 claim).  Regardless, the
predecessor version of section 335.1 actually provided for a one-year limitations period for
personal injury actions, so this argument is of no help to Foster.

Mktg., Inc.), 737 F.2d 1338, 1341 (5th Cir. 1984)); Bittner v. Borne Chemical Co., 691 F.2d 134,

135 (3d Cir.1982).  The Bankruptcy Court exercised its sound discretion to determine, like the

California District Court and the courts in the State Court Action, that on their face, the Foster

Claims lack merit.  The court thus properly disallowed the Foster Claims and valued them at $0

for all purposes.

## C.     Foster's Appeal of the Confirmation Order

In essence, Foster's appeal is really an appeal of the Estimation Order and not the

Confirmation Order.  However, the Court need not even reach the merits of the appeal of the

Confirmation Order, because Foster's appeal to this Court is moot.

Under well established authority, when a plan of reorganization has been substantially

consummated, as is the case here, an appeal of the Confirmation Order is presumed moot.  See

Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.),

416 F.3d 136, 144 (2d Cir. 2005); Aetna Casualty & Surety Co. v. LTV Steel Co., Inc. (In re

Chateaugay Corp.), 94 F.3d 772, 776 (2d Cir. 1996) ("Chateaugay III") ("Reviewing courts

presume that it will be inequitable or impractical to grant relief after substantial consummation of

a plan of reorganization.").  This doctrine "advances the policy of affording finality to the orders

and judgments of the bankruptcy court."  Lawrence v. Revere Copper & Brass Inc. (In re Revere

Copper & Brass Inc.), 78 B.R. 17, 21 (S.D.N.Y. 1987).

The presumption of mootness may be rebutted, but only upon a showing that:

(a) the court can still order some effective relief; (b) such relief will not affect the
re-emergence of the debtor as a revitalized corporate entity; (c) such relief will not
unravel intricate transactions so as to knock the props out from under the
authorization for every transaction that has taken place and create an
unmanageable, uncontrollable situation in the Bankruptcy Court; (d) the parties

-14-

who would be adversely affected by the modification have notice of the appeal
and an opportunity to participate in the proceedings; and (e) the appellant pursued
with diligence all available remedies to obtain a stay of execution of the
objectionable order if the failure to do so creates a situation rendering it
inequitable to reverse the orders appealed from.

Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.), 10 F.3d 944, 952-53 (2d Cir. 1993)

("Chateaugay II") (citations and internal quotations omitted).

The Court has no doubt that the Plan has been substanitally consummated.

Substantial consummation is defined in 11 U.S.C. § 1101 as "(A) transfer of all or

substantially all of the property proposed by the plan to be transferred; (B) assumption by the

debtor or by the successor to the debtor under the plan of the business or of the management of

all or substantially all of the property dealt with by the plan; and (C) commencement of

distribution under the plan."

In this case, all of the property of the Debtors proposed to be transferred and all equity

interests in the Debtors proposed to be cancelled under the Plan have been transferred and

cancelled, respectively; the Reorganized Debtors have assumed all business operations and all

property dealt with by the Plan; and the Reorganized Debtors not only have commenced

distributions under the Plan, but such distributions have been completed. Appellees submit that

since the Effective Date, among other things, (1) the Reorganized Debtors have assumed all

assets and properties and are operating the entire reorganized enterprise; (2) in excess of $10.5

million in cash distributions have been made under the Plan, in satisfaction of a myriad of

claims; (3) approximately 10 million shares of new common stock and 1 million warrants to

purchase new common stock of the Reorganized Debtors (representing nearly all stock

distributions to be made under the Plan) have been made to creditors and equityholders in

-15-

satisfaction and discharge of their claims; (4) all common and preferred stock held by Granite's pre-existing shareholders have been cancelled; (5) $250 million in the secured Exit Term Loan has been incurred by the Reorganized Debtors and owed to various creditors; and (6) executory contracts and unexpired leases have been assumed by the Reorganized Debtors in reliance on the restructuring effected by the Plan.

Appellant cannot establish any– let alone all five– of the Chateaugay II requirements to rebut the presumption of mootness.

## 1.    *Foster fails to address the "re-emergence of the debtor as a revitalized corporate entity" requirement*

Foster, a *pro se* appellant, seems to have misread the five Chateaugay II requirements– she erroneously substituted a "substantial consummation" requirement for this factor. The "substantial consummation" of a reogranization plan establishes the presumption of mootness; this factor, on the other hand, is necessary to rebut that presumption. Thus, appellant has obviously failed to satisfy this requirement.

Moreover, it is clear that Appellant's requested relief of $10 million would threaten the Reorganized Debtors' ongoing viability as successfully reorganized business enterprises. According to the Appellees, the relief being sought by Appellant would result in the reinstatement of approximately $500 million of secured indebtedness that the Reorganized Debtors are, and the Bankruptcy Court found the Reorganized Debtors to be, incapable of servicing.

Furthermore, the relief would potentially undo key settlement agreements that, once consummated, permitted Appellees to amend the Plan to pay all unsecured creditors in full.

Under this scenario, not only would the Reorganized Debtors undoubtedly breach existing contractual relationships, with the attendant loss of substantial revenues, but there also would be a potential inability to secure new programming contracts, which could lead to a liquidity crisis, and the obvious consequences attendant thereto.

### *2.    Foster failed to request a stay*

Appellant never attempted to seek a stay of either the Confirmation Order pending appeal, either in the Bankruptcy Court or in this Court, nor did she even request an expedited appeal. Rather, Foster filed a multitude of post-confirmation pleadings (all of which were denied) and sought additional time prior to the filing of her brief.

It is well settled that "when a stay of an order confirming a reorganization plan pending appeal has not been obtained and the plan has been consummated, the appeal may be dismissed as moot." In re Revere Copper and Brass Inc., 78 B.R. 17, 20 (S.D.N.Y. 1987) (collecting cases); In re Metromedia, 416 F.3d at 145.

Appellant argues that she did not obtain a stay, because the "bankruptcy court would have certainly denied it." (Reply Br. at 7.) However, the Second Circuit demands that a party seek a stay "even if it may seem highly unlikely that the bankruptcy court will issue one." In re Metromedia Fiber Network, Inc., 416 F.3d 136, 144 (2d Cir. 2005) (citing Chateaugay I, 988 F.2d at 326 ("A party cannot escape the obligation to protect its litigation position by so facile an argument.")).

### *3.    Effective Relief Cannot Be Granted*

At this juncture, it is not likely that effective relief can be granted, because so many transactions have occurred since June 4, 2007.

-17-

### 4.   *Foster's Requested Relief Would Unravel Intricate Transactions*

Unwinding or unraveling a substantially consummated plan, as Foster seeks here, "would
work incalculable inequity to many who have extended credit, settled claims, relinquished
collateral and transferred or acquired property in legitimate reliance on the unstayed order of
confirmation." Six W. Retail Acquisition, Inc. v. Loews Cineplex Entm't Corp., 286 B.R. 239,
247 (S.D.N.Y. 2002) (quoting In re Pub. Serv. Co of N.H., 963 F.2d 469, 475 (1st Cir. 1992)).

Numerous third parties have changed their economic position in reliance on the
implementation of the Plan. And, because many of the distributions pursuant to the
Reorganization Plan were made through financial intermediaries, the actual identities of the
holders of the exit loan and common stock are not even known. Moreover, it is likely that many
of the holders of such debt and equity have long since sold to third parties some or all of the their
debt or equity.

To unravel the multiple intricate transactions that have transpired pursuant to the
Reorganization Plan would "knock the props out from under the authorization for every
transaction that has taken place and create an unmanageable, uncontrollable situation for the
Bankruptcy Court." In re Metromedia, 416 F.3d at 144 (quoting In re Robert Farms, Inc., 652
F.2d 793, 797 (9th Cir. 1981)).

### 5.   *The Parties Adversely Affected Were Not Notified of the Appeal*

As set forth above, the Reorganized Debtors' creditors, customers, vendors and other
parties in interest would suffer irreparable harm if the relief sought in the Appeal were granted.
Appellant has failed to notify these parties of the Appeal as is required under the fourth prong of
the Chateaugay II test.

Because the Plan has been substantially consummated and Foster cannot establish any –
let alone all five – of the Chateaugay II requirements to rebut the presumption of mootness, the
Court has no alternative but to dismiss the appeal of the Confirmation Order as moot.  See
Kassover v. Gibson, 2003 WL 21222341, at *2-3 (S.D.N.Y. May 27, 2003); Six West Retail
Acquisition, Inc. v. Loews Cineplex Entm't Corp., 286 B.R. 239, 245 (S.D.N.Y. 2002).

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Estimation Order is AFFIRMED and
Foster's appeal of the Confirmation Order is DISMISSED as moot.

Dated: April 3, 2008

_____

U.S.D.J.

BY FIRST CLASS MAIL TO ALL PARTIES

BY FAX TO THE HON. ALLAN L. GROPPER, U.S.B.J.

-19-